Mark L. Javitch* (CA SBN 323729)
JAVITCH LAW OFFICE
480 S. Ellsworth Avenue
San Mateo, CA 94401
Telephone: 650-781-8000
Facsimile: 650-648-0705
mark@javitchlawoffice.com
*Attorney for Plaintiff* and the Class
*Pending Pro Hac Vice* Admission

UNITED STATES DISTRICT COURT

DISTRICT OF NEBRASKA

| | |
|---|---|
| NATHEN DAY, individually, and on behalf of all others similarly situated,<br><br>       Plaintiff,<br><br>v.<br><br>NATIONAL CAR CURE LLC, a Florida limited liability company, MATRIX FINANCIAL SERVICES, LLC, a Delaware limited liability company, MATRIX WARRANTY SOLUTIONS, INC., a Nevada corporation, GUSTAV RENNY, an individual, JOHN DOE, an unknown entity,<br><br>       Defendants. | Case No.:  8:20-cv-00104<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff NATHEN DAY ("Plaintiff") brings this Class Action Complaint and Demand for Jury Trial against Defendants NATIONAL CAR CURE LLC ("National Car Cure"), MATRIX FINANCIAL SERVICES, LLC ("Matrix Financial"), MATRIX WARRANTY SOLUTIONS, INC. ("Matrix Warranty," or together, the "Matrix Entities"), GUSTAV RENNY ("Renny"), an individual, and JOHN DOE (collectively, "Defendants") to stop their illegal practice of making unauthorized calls that play prerecorded voice messages to the cellular and residential telephones of consumers nationwide, and to obtain redress for all persons injured by their conduct. Plaintiff alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

## NATURE OF THE ACTION

1.      Defendants sell "Vehicle Service Contracts" that resemble auto insurance.

2.      Despite the price tag of $3,789.00, these Contracts are not actual auto insurance and do not typically satisfy the minimum local regulations requiring drivers to obtain and maintain car insurance prior to driving.

3.      As a primary part of their marketing efforts, Defendants placed thousands of automated calls employing a prerecorded voice message to consumers' phones nationwide.

4.      However, Defendants did not obtain consent prior to placing these calls and, therefore, are in violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.

5.      Congress enacted the TCPA in 1991 to restrict the use of sophisticated telemarketing equipment that could target millions of consumers *en masse*.  Congress found that these calls were not only a nuisance and an invasion of privacy to consumers specifically but were also a threat to interstate commerce generally.  *See* S. Rep. No. 102-178, at 2-3 (1991), as reprinted in 1991 U.S.C.C.A.N. 1968, 1969-71.

6.      The TCPA targets unauthorized calls exactly like the ones alleged in this case, based on Defendants' use of technological equipment to spam consumers with their advertising on a grand scale.

7.      Senator Hollings, the TCPA's sponsor, said "[c]omputerized calls are the scourge of modern civilization. They wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone right out of the wall."

8.      By placing the calls at issue, Defendants have violated the privacy and statutory rights of Plaintiff and the Class.

9.      Plaintiff therefore seeks an injunction requiring Defendants to stop their unlawful calling, as well as an award of actual and statutory damages to the Class members, together with costs.

**PARTIES**

10.     Plaintiff NATHEN DAY is a natural person and citizen of Nebraska.

11.     Defendant NATIONAL CAR CURE LLC is a Florida limited liability company with its principal place of business at 1665 Palm Beach Lakes Blvd., #215, West Palm Beach, Florida 33401.

12.     Defendant MATRIX FINANCIAL SERVICES, LLC is a limited liability company organized and existing under the laws of the State of Delaware with its principal place of business at 3100 McKinnon Street, Suite 420, Dallas, Texas 75201.

13.     Defendant MATRIX WARRANTY SOLUTIONS, INC. is a corporation organized and existing under the laws of the State of Nevada with its principal place of business at 3100 McKinnon Street, Suite 420, Dallas, Texas 75201.

14.     Defendant GUSTAV RENNY is an individual who resides in Palm Beach County, Florida.

15.     Defendant JOHN DOE ("John Doe") is an unknown business entity.

**JURISDICTION AND VENUE**

16.     This Court has original federal subject matter jurisdiction under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. § 227.

17.     This Court has specific personal jurisdiction over Defendants because this lawsuit arises directly out of Defendants' use of an Omaha (402) area code to place phone calls to Plaintiff who received them in this District, where he resides.  The harm substantially occurred in this District, where Plaintiff received the unsolicited phone calls.

18.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because the wrongful conduct giving rise to this case occurred in this District.

**GUSTAV RENNY'S ROBOCALLING ENTITIES**

19.     Renny owns and operates several corporate entities, including National Car Cure, selling or purporting to sell products called "Vehicle Service Contracts" ("Contracts") or other similar consumer contracts over the phone.

20.     These Contracts are expensive (approximately $4,000.00). It is difficult to understand what is covered. They are not insurance and they do not satisfy any regulatory requirements for insurance.

21.     In addition to National Car Cure, Renny also owns and operates entities called Pure Debt Solutions, Assured Auto Group, Inc., and National Auto Protection Corp.

22.     Pure Debt Solutions, Assured Auto Group, Inc. and National Auto Protection Corp. have all been designated as inactive and/or dissolved.

23.     Renny is the majority shareholder of all of these entities, and personally controls all actions of each of these entities.

24.     All of these entities operate out of the same address, at 1665 Palm Beach Lakes Blvd., #215, West Palm Beach, Florida, 33401.

25.     Under the name National Car Cure, and his other sham entities, Renny sells Vehicle Service Contracts on behalf of the Matrix Entities.

26.     Matrix Financial and Matrix Warranty sell and administer Vehicle Service Contracts which purport to offer coverage for "breakdowns" but do not constitute traditional auto insurance.

**COMMON FACTUAL ALLEGATIONS**

27.     To increase sales of the Matrix Entities' Contracts, Renny hired John Doe to call and play prerecorded voice messages to thousands of residential and cellular phones at a time.

28.     John Doe implemented a campaign to make telemarketing calls to thousands of consumers around the country simultaneously. John Doe, together with the other Defendants, amassed

the names, phone numbers, and vehicle information for thousands of consumers, from unknown sources, and then placed unsolicited calls offering Vehicle Protection Contracts. On information and belief, despite being sued for violating the TCPA in at least four (4) lawsuits, this conduct is continuing.

29.     When Plaintiff and Class members answered their phones expecting to hear from a real person, John Doe pulled a bait and switch by playing a prerecorded voice message.

30.     The prerecorded voice advertised Defendants' Contracts and invited the recipient to "press one" to learn more or purchase the product.

31.     If the recipient "pressed one," the call was transferred to one of Renny's entities, in Plaintiff's case, National Car Cure.

32.     The live representative from National Car Cure would solicit the robocalling victim for a Contract with the Matrix Entities for the supposed provision of extended automotive coverage in the state where the victim resides.

33.     Renny and National Car Cure paid John Doe for initiating the phone calls to all Class members and for transferring each live caller who was transferred to National Car Cure for solicitation.

34.     Renny and National Car Cure were compensated by the Matrix Entities for every Contract sold under this unlawful scheme.

### PIERCING THE CORPORATE VEIL – ALTER EGO

35.     Renny set up multiple shell corporations to sell Contracts through unlawful robocalling.

36.     Renny used this strategy to avoid personal liability from the legal ramifications of violating the TCPA.

37.     When one of Renny's corporate entities was caught robocalling, rather than participate in the litigation, Renny would simply abandon or dissolve the entity. In the litigation, Renny would assert

COMPLAINT                                            5

the supposed "limited liability" offered by his fictitious corporate entities and shut down the sham entity, and resume business as usual under another business entity.

38.     For instance, Renny started National Auto Protection Corp. ("National Auto") on May 21, 2015.

39.     Renny was an initial officer and director of National Auto.

40.     On June 6, 2019, Plaintiff Catherine Shanahan and a putative class sued Renny's National Auto and Matrix Financial Services LLC for TCPA violations, and the "Illinois Litigation" is currently pending.  *See Shanahan v. National Auto Protection Corp*, *et al.*, Case No. 1:19-cv-3788 (ND IL). Matrix Warranty was added as a defendant in the Illinois Litigation on July 16, 2019.

41.     However, Renny dissolved National Auto and he is no longer participating in the Illinois Litigation. *See id.* ("the corporate existence of NAPC has terminated"); and Exhibit "A" - Dissolution of National Auto Protection Corp on September 6, 2019, signed by Renny.

42.     The Matrix Entities remain defendants in the Illinois Litigation, but argue that they are not subject to personal jurisdiction in Illinois and are also not responsible for Renny's shell companies' TCPA violations under agency principles.

43.     Meanwhile, Renny simply formed a new corporate entity and he is still robocalling to sell the Matrix Entities' Vehicle Service Contracts.

44.     The Matrix Entities have actual knowledge that Renny's entities conduct unsolicited robocalling on their behalf.

45.     Renny's entities and their Vehicle Service Contract partners have been caught and sued for robocalling so many times that the Matrix Entities cannot plausibly argue they do not have knowledge of Renny's robocalling.  Indeed, the Matrix Entities are currently arguing that they have not ratified Renny's robocalling in the Illinois Litigation even though they continue to do business with Renny and his sham entities and take money from his victims.

COMPLAINT                                        6

46.     The Matrix Entities are continuing to engage in unsolicited robocalling with Renny simply under a different company name – his new *nom de plume*, National Car Cure.

47.     Previously, Renny's entity, Pure Debt Solutions, was sued for a TCPA violation that allegedly occurred on February 12, 2019.  *See Boehm v. Pure Debt Solutions*, Case No. 8:19-cv-000117 (D. Neb., Mar. 20, 2019) (Complaint for TCPA violations).

48.     Renny is the president, secretary, and treasurer of Pure Debt Solutions Corp., a Wyoming corporation. *See* Exhibit "C."

49.     Pure Debt Solutions is now dissolved and listed as inactive since February 8, 2020.

50.     The office address of Pure Debt Solutions is in the same building as Renny's other entities – 1665 Palm Beach Lakes Blvd., Suite 200, West Palm Beach, Florida, 33401. *See* Exhibit "C."

51.     Another Renny entity, Assured Auto Group, Inc., was sued for a TCPA violation that allegedly occurred on August 23, 2019.  *See Fabrikant v. Assured Auto Group, Inc.*, *et al.*, Case No. 8:19-cv-00383-SMB (D. Neb., Sep. 1, 2019) (Complaint for TCPA violations).

52.     Renny is listed as the president of Assured Auto Group, Inc. on the Florida Secretary of State website.

53.     On March 13, 2020, Renny signed an Articles of Dissolution causing Assured Auto Group, Inc. to become inactive.  *See* Exhibit "D."

54.     Renny started National Car Cure on March 18, 2019.

55.     Renny is listed as the "member or authorized representative" in National Car Cure's articles of organization.

56.     Renny signed National Car Cure's January 2020 Florida annual report as the "manager".

57.     At all times, National Car Cure and Renny's other companies – Assured Auto Group, Inc., National Auto Protection Corp., and Pure Debt Solutions – were under the actual control of Renny.

58.     Renny exercised control over these entities to structure his personal activities in a way to avoid personal TCPA liability while still benefitting from robocalling, in complete contravention of the rights of Plaintiff and the Class.

59.     National Car Cure and the other entities that Renny dissolved are mere corporate shells, or alter egos, for Renny.

60.     When a corporation becomes the mere alter ego, or business conduit, of a person, it may be disregarded.

61.     The corporate entity National Car Cure must be disregarded to prevent injustice to Plaintiff and the Class.

62.     There is good cause to determine that the entity National Car Cure must be disregarded.

63.     National Car Cure has been grossly and inadequately capitalized at the time it was incorporated.  Renny formed this entity as a mere corporate shell to continue the illegal activity in which he personally engaged under his prior sham entity National Auto.

64.     Upon information and belief, National Car Cure never paid any dividends and is insolvent.

65.     Renny's prior entity, National Auto, was also insolvent and dissolved on September 13, 2019, so that it could avoid having to compensate the class in the Illinois Litigation.

66.     Renny diverted the corporate funds of National Auto Protection Corp. to improper uses in hopes of avoiding liability and litigation costs. Renny is likely to do the same with National Car Cure.

67.     National Car Cure is likely to dissolve for the purpose of avoiding having to compensate the Class in this case.

**FACTS SPECIFIC TO PLAINTIFF**

68.     Plaintiff received at least three (3) phone calls that used a prerecorded voice advertising auto warranties.

COMPLAINT                                          8

1 69. Each time, Plaintiff tried to identify who was calling, but was unable because the calls

2 disconnected him.

3 70. On February 17, 2020 at 3:56 p.m., Plaintiff received a call from (402) 549-3603 that left

4 a prerecorded voice on his voicemail that said to "press one now to extend or reinstate your car's auto

5 warranty."

6

7 71. On March 6, 2020, Plaintiff received a call from (402) 554-6759 on Plaintiff's cell phone

8 ending in 0181 at 3:07 p.m.

9



72. The call was from a fake (402) area code that appeared familiar to Plaintiff, who lives in

Omaha and also has a (402) area code.  The spoofed area code was designed to trick Plaintiff into

answering.

73. When Plaintiff answered the call, Plaintiff heard a prerecorded voice message advertising

auto warranties.

74. The voice said "your car warranty is expiring and this is your last chance to purchase an

extended car warranty."

COMPLAINT     9

75.     On November 1, 2019, the FCC issued a warning  concerning "Auto Warranty Scams" that warn that "if you own a vehicle and a phone, you may receive calls from scammers posing as representatives of a car dealer…telling you that your auto warranty…is about to expire."

76.     The voice said to "press one" to be connected to a representative.

77.     When Plaintiff responded to the automated prompts, Plaintiff was connected with a representative of National Car Cure named Victoria Reyes.

78.     Ms. Reyes then tried to solicit Plaintiff for the sale a Vehicle Service Contract from the Matrix Entities.

79.     Plaintiff did not want or need a vehicle protection policy. However, in order to cease harassment from anonymous robocallers such as Defendants, Plaintiff purchased a vehicle protection policy for the sole purpose of identifying who was calling and/or the company who was responsible for calling.

80.     Plaintiff completed the purchase and received a Contract from National Car Cure.  *See* Exhibit "B".

81.     The Vehicle Protection Contract was written, signed and executed between Plaintiff, National Car Cure, Matrix Financial, and Matrix Warranty.

82.     National Car Cure wrote the Contract on the forms specified and provided by the Matrix Entities.

83.     The Contract started out in the form of a letter addressed to Plaintiff at his residence in Omaha, Nebraska.  The letter was written from National Car Cure to Plaintiff and signed by Victoria Reyes.

84.     The letter said that the "mechanical breakdown protection is detailed in the enclosed contract booklet."

85. The Contract included the "Element" logo, which is a trademark used by the Matrix Entities.

86. The Contract stated that "[t]his Contract is between You and the **Administrator/Obligor**." (emphasis in original).

87. The Contract identified National Car Cure as the "Selling Company and Finance Company."

88. The Contract identified Matrix Financial as the "Obligor."

89. The Contract identified Matrix Warranty as the "Administrator."

90. Plaintiff never consented to receive calls from Defendants. Plaintiff had no relationship with Defendants and has never requested that Defendants contact him in any manner.

91. Defendants' calls violated Plaintiff's statutory rights and caused actual damages.

92. In addition to causing statutory damages, the calls caused actual damages, including annoyance, intrusion on privacy and seclusion, and wasted Plaintiff's time and money.

93. Plaintiff incurred actual monetary damages because he was forced to purchase the Contract for which he was solicited in order to identify the persons responsible for the robocalling.

94. In addition to incurring damages, Plaintiff is now being prejudiced on an ongoing basis because he cannot currently determine the identity of the party who initiated the robocall, John Doe. John Doe is the party that robocalled Plaintiff and then transferred the call to National Car Cure once Plaintiff pressed "1".

95. Plaintiff has demanded that Defendants disclose the identity of John Doe, the exact party that initiated the robocall in combination with and at the behest of Defendants as part of a conspiracy to sell Contracts through the use of illegal sales practices.

96. Despite Plaintiff's requests, Defendants have concealed and have refused to disclose the identity of any third party that participated in the robocall.

## CLASS ALLEGATIONS

97.     **Class Definition**: Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of Plaintiff and a Class defined as follows:

> All persons in the United States who: (1) from 4 years prior to the filing of this lawsuit to the present; (2) received at least one telephone call; (3) on his or her cellular or residential telephone; (4) that played an artificial or prerecorded voice message; (5) for the purpose of promoting Defendants' products or services; (6) where Defendants did not have the persons' prior express written consent.

98.     The following people are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendants, Defendants' subsidiaries, parents, successors, predecessors, and any entity in which the Defendants or their parents have a controlling interest and its current or former employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendants' counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

99.     **Numerosity**: The exact number of the Class members is unknown and not available to Plaintiff, but it is clear that individual joinder is impracticable. On information and belief, Defendants placed telephone calls to thousands of consumers who fall into the definition of the Class. Members of the Class can be identified through Defendants' records.

100.    **Typicality**: Plaintiff's claims are typical of the claims of other members of the Class, in that Plaintiff and the Class members sustained damages arising out of Defendants' uniform wrongful conduct and unsolicited telephone calls.

101.    **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the other members of the Class. Plaintiff's claims are made in a representative capacity on behalf of the other members of the Class. Plaintiff has no interests antagonistic to the interests of the other members of the proposed Class and is subject to no unique defenses. Plaintiff has retained

competent counsel to prosecute the case on behalf of Plaintiff and the proposed Class.  Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Class and have the financial resources to do so.

102.   **Policies Generally Applicable to the Class**: This class action is appropriate for certification because Defendants have acted or refused to act on grounds generally applicable to the Class as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class members and making final injunctive relief appropriate with respect to the Class as a whole. Defendants' practices challenged herein apply to and affect the Class members uniformly, and Plaintiff's challenge of those practices hinge on Defendants' conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff.

103.   **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

a.   Whether Defendants are directly or indirectly liable under the TCPA;

b.   Whether the calls played artificial or prerecorded voice messages;

c.   Whether Defendants obtained prior written consent prior to placing the calls;

d.   Whether members of the Class are entitled to treble damages based on the *knowledge* or *willfulness* of Defendants' conduct;

e.   Whether the corporate entity of National Car Cure should be disregarded as a mere fiction to prevent fraud and injustice on Plaintiff and the Class;

104.   **Superiority**: This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy as joinder of all parties is impracticable. The damages suffered by the individual members

of the Class will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' actions. Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief from Defendants' misconduct. Even if members of the Class could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single Court. Economies of time, effort and expense will be fostered, and uniformity of decisions ensured.

## BASIS FOR LIABILITY

105.    Plaintiff alleges that even if Defendants claim that they did not make the TCPA violating robocall to Plaintiff directly, Defendants are still liable for the TCPA violations under the following theories of liability: (1) Direct Liability, (2) Actual Authority, (3) Apparent Authority, (4) Ratification, (5) Joint Enterprise, and (6) Acting in Concert.

## DIRECT LIABILITY

106.    Defendants' scheme involves the use of illegal robocalling to sell their products.

107.    Defendants include robocalling in their sales practice, but they merely outsource their robocalling to third-parties.

108.    But outsourcing telemarketing does not shield Defendants from direct liability under the TCPA.

109.    On May 9, 2013, the FCC confirmed this principle in a Declaratory Ruling holding that sellers may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller **to avoid potential liability by outsourcing** its telemarketing activities to unsupervised third parties **would leave consumers** in many cases **without an effective remedy** for telemarketing intrusions. This

would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment **limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient**, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief.  As the FTC noted, because "[s]ellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy.

*May 2013 FCC Ruling*, 28 FCC Rcd at 6588 (¶ 37) (internal citations omitted) (emphasis added).

110.    The Matrix Entities entered into agreements or signed contracts with each other and with National Car Cure, making National Car Cure their authorized sales agent, to promote the Matrix Entities' products across the country.

111.    National Car Cure hired John Doe to promote the Matrix Entities' products pursuant to illegal calling with prerecorded voices. National Car Cure hired John Doe to perform robocalling on behalf of the joint product of National Car Cure and the Matrix Entities.

112.    The Matrix Entities knew that unlawful robocalling was used in promoting their products because Renny's significant sales volume is indicative of robocalling, and his previous entities had been caught robocalling at least three times before Plaintiff was called and bought the Matrix Entities' Contract.[1]

113.    But the Matrix Entities nevertheless accepted and continue accept, and do not object to, Contracts generated by unlawful robocalling. The Matrix Entities continue to accept business generated from Renny operating under the name National Car Cure—just like they did when Renny was operating under the name National Auto—even though Renny's unlawful robocalling caused them to be sued in a

---

[1] *See Shanahan v. National Auto Protection Corp, et al.*, Case No. 1:19-cv-03788 (ND IL, Jan. 2, 2020, Dkt. 54) (Motion to Dismiss filed by the Matrix Entities).

federal lawsuit in the Illinois Litigation, and even though National Auto entered into a consent decree with the Kansas Attorney General for engaging in practices that violated the TCPA.

114. Even today, the Matrix Entities continue to accept business through National Car Cure that is generated by Renny's robocalling.

## AGENCY ALLEGATIONS

115. Defendants may be held liable even if they did not "initiate" the violating call, because the direct violator was acting as their agent with their authority when making the call.

116. The May 2013 FCC Ruling rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of formal agency and immediate direction and control over the third-party who placed the telemarketing call. 28 FCC Rcd at 6587 n. 107.

117. Prior to conducting discovery in this litigation, due to the anonymous nature of robocalling, Plaintiff has no way to identify John Doe, but Plaintiff will seek leave to conduct early discovery as soon as is practicable to identify the John Doe entity.

118. However, for the purposes of TCPA liability, Plaintiff is not expected to know this information at the pleading stage.

119. The May 2013 FCC Ruling states that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *Id*. at 6592-593 (¶ 46).

## ACTUAL AUTHORITY

120. The Matrix Entities authorized National Car Cure to generate prospective customers. National Car Cure hired John Doe to promote Defendants' products pursuant to robocalling. The integration of robocalling into their sales process was so seamless that it appeared to an outside party that John Doe and National Car Cure were the telemarketing department of the Matrix Entities.

121.   National Car Cure was an agent for the Matrix Entities. In selling and performing different parts of their service, the Matrix Entities and National Car Cure split and delegated authority to each other.   For instance, National Car Cure handled sales, customer service, and printing and mailing the Contract booklets, while the Matrix Entities handling administering the underlying claims from consumers.

122.   John Doe was hired by National Car Cure, and acted in concert with the Matrix Entities, which permitted the Matrix Entities to enjoy the benefits of mass robocalling while purporting to move the illegal activity "outside their purview."

123.   Accordingly, the FCC has explained that its "rules generally establish that **the party on whose behalf a solicitation is made** bears ultimate responsibility for any violations." *See In re Rules & Regulations Implementing the TCPA*, CC Docket No. 92-90, Memorandum Opinion and Order, 10 FCC Rcd 12391, 12397 (¶ 13) (1995) (emphasis added).

124.   In its January 4, 2008 ruling, the FCC reiterated that a company on whose behalf a telephone call is made bears the responsibility for any violations. *Id*. (specifically recognizing "on behalf of" liability in the context of an autodialed or prerecorded message call sent to a consumer by a third party on another entity's behalf under 47 U.S.C. § 227(b)).

125.   More specifically, the May 2013 FCC Ruling held that, even in the absence of evidence of a formal contractual relationship between the seller and the telemarketer, a seller is liable for telemarketing calls if the telemarketer "has apparent (if not actual) authority" to make the calls. 28 FCC Rcd at 6586 (¶ 34).

126.   Defendant John Doe solicited Plaintiff and the Class on behalf of National Car Cure and the Matrix Entities, and John Doe had their actual authority to solicit Plaintiff and the Class by using prerecorded voice messages.

127.    The Matrix Entities controlled and specified the exact forms and Contracts that National Car Cure could write and to which they were bound as named parties, such as the one that Plaintiff paid for.

128.    The Matrix Entities only permitted National Car Cure to sell the Matrix Entities' Contracts with the exact language, forms, and prices that were specified by the Matrix Entities.

129.    National Car Cure could not alter the Matrix Entities' Contract in any way, and it could only sell Contracts to a customer on behalf of the Matrix Entities on the exact terms dictated by the Matrix Entities. In fact, the Contract states "ANY CHANGE TO THE PREPRINTED TERMS AND CONDITIONS OF THIS CONTRACT IS INVALID AND OF NO FORCE OR EFFECT."

130.    On information and belief, the Matrix Entities specified the questions that National Car Cure needed to qualify and sell their Contracts.

131.    The Vehicle Protection Contract identifies National Car Cure as the "SELLING COMPANY AND FINANCE COMPANY" of the Matrix Entities' product.

132.    The Contract states that it is "BETWEEN YOU AND THE **ADMINISTRATOR OBLIGOR**." (emphasis in original).

133.    Further, the Contract lists Matrix Financial Services, LLC, 3100 McKinnon St., Suite 420, Dallas, TX 75201 as the "OBLIGOR" that can be contacted at 833-228-1900.

134.    The Contract states that Matrix Warranty is located at the same address and phone number as Matrix Financial—*i.e.*, 3100 McKinnon St., Suite 420, Dallas, TX, 75201. The Contract further states that Matrix Warranty is the "ADMINISTRATOR" that can be contacted at 833-228-1900.

### APPARENT AUTHORITY

135.    The May 2013 FCC Ruling further clarifies the circumstances under which a telemarketer has apparent authority:

[A]pparent authority may be supported by evidence that the seller allows the outside sales entity access to information and systems that normally would be within the seller's exclusive control, including: access to detailed information regarding the nature and pricing of the seller's products and services or to the seller's customer information. The ability by the outside sales entity to enter consumer information into the seller's sales or customer systems, as well as the **authority to use the seller's trade name, trademark and service mark** may also be relevant. It may also be persuasive that the seller approved, wrote or reviewed the outside entity's telemarketing scripts. Finally, **a seller would be responsible under the TCPA for the unauthorized conduct of a third-party telemarketer that is otherwise authorized to market on the seller's behalf if the seller knew (or reasonably should have known) that the telemarketer was violating the TCPA on the seller's behalf and the seller failed to take effective steps** within its power to force the telemarketer to cease that conduct.

28 FCC Rcd at 6592 (¶ 46) (emphasis added).

136.    The Matrix Entities authorized National Car Cure and John Doe to generate prospective customers for them.

137.    The integration of their sales efforts with robocalling by National Car Cure and the Matrix Entities was so seamless that it appeared to Plaintiff that John Doe, National Car Cure and the Matrix Entities all were acting together as the same company.

138.    The Matrix Entities allowed National Car Cure to enter consumer information into their sales or customer systems.

139.    The Matrix Entities gave National Car Cure the authority to use their trade name, trademark, service mark, forms, contracts, and materials. *See* Exhibit "B" (using "The Element," a trademark used by the Matrix Entities).

140.    Consumers, including Plaintiff and members of the Class, reasonably believed and relied on the fact that John Doe had received permission to sell, market, and solicit the products of National Car Cure and the Matrix Entities, because National Car Cure is authorized to sign Contracts on behalf of the Matrix Entities that legally bind the Matrix Entities to enter into Vehicle Service Contract agreements with consumers.

141.   Further, Plaintiff and members of the Class reasonably believed and relied on the fact that National Car Cure had received permission from the Matrix Entities to use prerecorded messages and/or hire John Doe to use prerecorded messages because National Car Cure accepted incoming transfers generated by robocallers and the Matrix Entities continued to accept business generated by National Car Cure and Renny, even though they had previously been caught robocalling numerous times.

142.   The apparent authority of National Car Cure is illustrated in the Vehicle Service Contract issued by Defendants, where it lists National Car Cure as the "SELLING COMPANY AND FINANCE COMPANY" for the Matrix Entities' products.

143.   National Car Cure and/or John Doe was able to call Plaintiff out of the blue pursuant to a robocall and sell a Contract with the Matrix Entities in under 60 minutes.

144.   National Car Cure and John Doe regularly sold and had permission to sell Contracts with the Matrix Entities becoming bound as parties thereto, which indicates National Car Cure and John Doe had apparent authority to sell the Matrix Entities' Contracts.

145.   The Matrix Entities permitted National Car Cure to bind them under contract on the fly without even checking to see whether the Matrix Entities wanted to do business with the customer.

146.   This automated contract writing procedure delegated National Car Cure a wide authorization to quickly write Contracts under the name of the Matrix Entities.

147.   As a direct and proximate result of John Doe's illegal phone calls—which were made on behalf of and with the apparent authority of National Car Cure and the Matrix Entities—Plaintiff and Class members suffered actual damages, including the cost to purchase the Contracts, their time to answer the violating calls, the monies paid to receive the calls, the depleted phone minutes available to them, invasion of their privacy, and the nuisance of receiving the calls.

## RATIFICATION

148.     The Matrix Entities and National Car Cure knowingly and actively accepted business that originated through the illegal robocalls placed by John Doe.

149.     By accepting these Contracts and executing Contracts with the robocall victims, the Matrix Entities and National Car Cure "manifest[ed] assent or otherwise consent[ed] . . . to act" on behalf of John Doe, as described in the Restatement (Third) of Agency.

150.     The Matrix Entities and National Car Cure ratified John Doe's TCPA violations by knowingly accepting the benefits of new customers and revenue despite the fact that the sale was generated through illegal calling.

151.     The Matrix Entities and National Car Cure ratified John Doe's TCPA violations by being aware of the violations, being willfully ignorant of the violations, or by being aware that such knowledge was lacking.

152.     The Matrix Entities are currently defending themselves in federal litigation in Illinois for the exact same type of TCPA violation committed by Renny's defunct corporate entity National Auto.

153.     The Matrix Entities know that Renny and his sham entities have been cited for robocalling in the past (for example, in the lawsuits mentioned above), but the Matrix Entities failed to terminate their relationship with Renny and National Car Cure.

154.     The Matrix Entities ratified John Doe's TCPA violation by contracting with National Car Cure, authorizing National Car Cure to be their sales agent, and entering into customer Contracts generated from unlawful robocalling, while they reasonably should have known that National Car Cure and John Doe generate business by making calls to consumers using a prerecorded voice without consent.

155.     The Matrix Entities and National Car Cure caused John Doe to have their actual authority.  *See* Restatement § 4.01 cmt. b.

156.     As a direct and proximate result of John Doe's illegal phone calls—which were made on behalf of and ratified by National Car Cure and the Matrix Entities—Plaintiff and the Class members suffered actual damages, including the cost to purchase the Contracts, their time to answer the violating calls, the monies paid to receive the calls, the depleted phone minutes available to them, invasion of their privacy, and the nuisance of receiving the calls.

## JOINT ENTERPRISE

157.     The Matrix Entities and National Car Cure had a tacit agreement or approved of after the fact, with John Doe for the marketing of their services pursuant to illegal robocalls.

158.     Defendants were part of a common enterprise and had a community of interest in marketing and advertising the Contracts from the Matrix Entities and National Car Cure.

159.     National Car Cure and the Matrix Entities had an equal right to control the conduct thereof.  They delegated authority and split up responsibilities amongst themselves.

160.     In some cases, National Car Cure was an agent for the Matrix Entities and in other cases the Matrix Entities were agents of National Car Cure. In selling Contracts and performing complementary services, the Matrix Entities and National Car Cure split and delegated authority to each other. For instance, National Car Cure handled sales, customer service, and printing and mailing the Contract booklets, while the Matrix Entities handling administering the underlying claims from consumers.

161.     As a direct and proximate result of John Doe's illegal phone calls—which were made in a joint enterprise with National Car Cure and the Matrix Entities—Plaintiff and Class members suffered actual damages, including the cost to purchase the Contracts, their time to answer the TCPA-violating calls, the depleted phone minutes available to them, the lost time and lost use of their phones while the unsolicited phone call is being placed, the invasion of their privacy, and the nuisance of receiving the calls.

COMPLAINT                                                22

162.    The Matrix Entities, National Car Cure and John Doe are jointly and severally liable for the resulting damage caused by National Car Cure's TCPA-violating telephone calls.

## ACTING IN CONCERT

163.    National Car Cure and the Matrix Entities acted in concert with John Doe when they sold Contracts pursuant to John Doe's illegal robocalls.

164.    Defendants received the benefit of the potential customer provided by the illegal robocalling.

165.    The Matrix Entities then compensated National Car Cure for each sale, and National Car Cure compensated John Doe for each live transfer generated pursuant to its robocalling efforts.

166.    Defendants were part of a common design to robocall consumers and then sell them Vehicle Service Contracts.

167.    Defendants had a tacit understanding that John Doe was robocalling in violation of the TCPA.

168.    Defendants knew that John Doe's conduct was a breach of duty to Plaintiff and the Class.

169.    The Matrix Entities gave John Doe and National Car Cure substantial assistance in accomplishing the tortious result, including compensating National Car Cure and John Doe for generating customers pursuant to robocalls and giving instructions on what to ask and how to sell their Contracts.

170.    The Matrix Entities and National Car Cure furthered the tortious conduct by their cooperation, and lending aid to John Doe and National Car Cure, and adopting John Doe's and National Car Cure's acts for their own benefit.

171.    The Matrix Entities' and National Car Cure's own conduct constitutes a breach of duty to Plaintiff.

172.    Plaintiff's injury is indivisible.

COMPLAINT                                          23

173.    All Defendants acted tortuously, and the harm resulted from the robocalling by John Doe.

174.    Defendants are all jointly and severally liable for the resulting damage caused by John Doe.

## FIRST CAUSE OF ACTION
### Violation of 47 U.S.C. § 227(b)
### (On behalf of Plaintiff and the Class)
### (Against all Defendants)

175.    Plaintiff incorporates the foregoing allegations as if fully set forth herein.

176.    Defendants and/or their agent John Doe placed telephone calls to Plaintiff's and the Class members' cellular and residential telephones without having their prior express written consent to do so.

177.    Defendants' calls were made for a commercial purpose.

178.    Defendants played a prerecorded voice message to the cellular and residential phones of Plaintiff and the Class members as proscribed by 47 U.S.C. § 227(b)(1)(A)(iii) and (B).

179.    As a result of their unlawful conduct, Defendants repeatedly invaded the personal privacy of Plaintiff and the Class, causing them to suffer damages and, under 47 U.S.C. § 227(b)(3)(B), entitling them to recover $500 in statutory damages for each violation and an injunction requiring Defendants to stop their illegal calling campaign.

180.    Defendants made the violating calls "*willfully*" and/or "*knowingly*" under 47 U.S.C. § 227(b)(3)(C).

181.    If the court finds that Defendants *willfully* and/or *knowingly* violated this subsection, the court may increase the civil fine from $500 to $1500 per violation under 47 U.S.C. § 227(b)(3)(C).

## SECOND CAUSE OF ACTION
### Piercing the Corporate Veil
### (On behalf of Plaintiff and the Class)
### (Against Gustav Renny and National Car Cure LLC)

182.    Plaintiff incorporates the foregoing allegations as if fully set forth herein.

183.   Renny set up the entity National Car Cure as a shell to fraudulently avoid his personal TCPA liability.

184.   National Car Cure is grossly underfunded and inadequately capitalized.

185.   National Car Cure is insolvent and unable to respond to this litigation.

186.   Renny's other entity, National Auto Protection Corp., was also insolvent and was dissolved shortly after litigation against it began.

187.   As occurred with Renny's other entity, National Auto Protection Corp., Renny has or is likely to improperly divert funds away from National Car Cure in order to avoid liability and litigation costs in this case.  Renny said that National Car Cure would be dissolved shortly.

188.   National Car Cure is a mere façade for the personal dealings of the shareholder, Renny.

189.   The separate entity of National Car Cure should be disregarded because the corporation is a mere shell, serving no legitimate business purpose, used only for Renny to intentionally perpetuate the illegal activity.

190.   Renny was in complete control of National Car Cure and the company failed to follow standard corporate formalities.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff NATHEN DAY, individually and on behalf of the Class, prays for the following relief:

A.   An order certifying the Class as defined above, appointing Plaintiff as the Class representative, and appointing his counsel as Class Counsel;

B.   An order declaring that Defendants' actions, as set out above, violate the TCPA;

C.   An order declaring that Defendants' actions, as set out above, violate the TCPA *willfully* and *knowingly*;

D.    An order declaring that the entity National Car Cure LLC is a mere corporate fiction and an alter ego of Gustav Renny;

E.    An order declaring that the corporate entity National Car Cure LLC is hereby disregarded to prevent fraud and injustice on Plaintiff and the Class, and that Gustav Renny is personally liable to Plaintiff and the Class;

F.    An injunction requiring Defendants to cease all unlawful calls without first obtaining the call recipients' prior express written consent to receive such calls, and otherwise protecting interests of the Class;

G.    An award of actual and/or statutory damages and penalties;

H.    An award of costs; and

I.    Such other and further relief that the Court deems reasonable and just.

## JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.


Dated: March 18, 2020          Respectfully submitted,

NATHEN DAY, individually and on behalf of all others similarly situated,

By: /s/ Mark L. Javitch

Mark L. Javitch (California SBN 323729)*
JAVITCH LAW OFFICE
480 S. Ellsworth Avenue
San Mateo CA 94401
Tel: 650-781-8000
Fax: 650-648-0705

By: /s/ Thomas A. Zimmerman
Thomas A. Zimmerman, Jr. (IL #6231944)*
tom@attorneyzim.com
ZIMMERMAN LAW OFFICES, P.C.
77 W. Washington Street, Suite 1220

Chicago, Illinois 60602
Telephone: (312) 440-0020
Facsimile: (312) 440-4180
www.attorneyzim.com

*Attorneys for Plaintiff and the Putative Class*
*Pending Pro Hac Vice Admissions