IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| NATHEN DAY, individually, and on behalf of all others similarly situated;<br><br>Plaintiff,<br><br>vs.<br><br>GUSTAV RENNY, an individual; NATIONAL CAR CURE LLC, a Florida limited liability company; MATRIX FINANCIAL SERVICES, LLC, a Delaware limited liability company; MATRIX WARRANTY SOLUTIONS, INC., a Nevada corporation; and JOHN DOE, an unknown entity;<br><br>Defendants. | 8:20CV104<br><br>MEMORANDUM AND ORDER |

This matter is before the Court on the Motions to Dismiss filed by Defendants Matrix Financial Services, LLC (Matrix Financial) and Matrix Warranty Solutions, Inc. (Matrix Warranty) (collectively Matrix Defendants), ECF No. 25; and Gustav Renny, ECF No. 28. For the following reasons, the Motion filed by the Matrix Defendants will be denied without prejudice to reassertion following jurisdictional discovery, and the Motion filed by Renny will be granted.

## BACKGROUND

The following facts are taken from the Complaint, ECF No. 1, and are assumed true for purposes of these motions.

**I.   Parties**

Plaintiff Nathen Day brought this putative class action on behalf of himself and other recipients of unauthorized telemarketing calls with prerecorded messages (robocalls). He is a citizen of Nebraska.

Defendant Matrix Financial is a Delaware limited liability company with its primary place of business in Dallas, Texas. Defendant Matrix Warranty is a Nevada corporation with its principal place of business in Dallas, Texas. The Matrix Defendants provide and administer vehicle service contracts.

Defendant National Car Cure LLC (National Car) is a Florida limited liability company with its principal place of business in West Palm Beach, Florida. National Car sells vehicle service contracts on forms provided by the Matrix Defendants. Renny owns and operates National Car. Renny also owned and operated several other companies, that are now dissolved or inactive. He is a citizen of Florida.

**II.     Factual History**

National Car contracted with an unknown entity, John Doe, to contact consumers through robocalls with prerecorded messages stating, "[Y]our car warranty is expiring[,] and this is your last chance to purchase an extended car warranty." Compl., ECF No. 1 at Page ID 9. The message further instructed consumers to "press one to be connected to a representative." *Id.* at 10.

Day received robocalls that used a prerecorded voice advertising auto warranties at least three times. Each time, Day attempted unsuccessfully to identify the caller. Each call had a (402) area code—the same area code as Day's Omaha phone number. Most recently, on March 6, 2020, Day answered a robocall advertising auto warranties. He followed the instructions in the recording and was connected to a representative

2

employed by National Car. Day purchased a vehicle service contract for the purpose of identifying the party responsible for the robocalls.

Some time thereafter, Day received a written vehicle service contract in the mail. Ex. B., ECF No. 1-2. The contract stated it was between Day and "the Administrator Obligor." *Id.* at Page ID 34. The contract defined Matrix Finance as the Obligor, *id.* at Page ID 32, and Matrix Warranty as the Administrator, *id.* at Page ID 39. The contract defined National Car as the Selling Company. *Id.* at Page ID 32.

## STANDARDS OF REVIEW

### I.      Fed. R. Civ. P. 12(b)(2)

To survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must plead "sufficient facts 'to support a reasonable inference that the defendant[] can be subjected to jurisdiction within the state.'" *K-V Pharm. Co. v. J. Uriach & CIA, S.A.*, 648 F.3d 588, 591–92 (8th Cir. 2011). When jurisdiction is challenged, the "nonmoving party need only make a prima facie showing of jurisdiction." *Pangaea, Inc. v. Flying Burrito LLC*, 647 F.3d 741, 745 (8th Cir. 2011) (quoting *Dakota Indus., Inc. v. Dakota Sportswear, Inc.*, 946 F.2d 1384, 1387 (8th Cir. 1991)). "[T]he court must look at the facts in the light most favorable to the nonmoving party, and resolve all factual conflicts in favor of that party." *Id.* (quoting *Dakota Indus.*, 946 F.2d at 1387).

### II.     Fed. R. Civ. P. 12(b)(6)

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To satisfy this requirement, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Corrado v. Life Inv'rs Ins. Co. of Am.*, 804 F.3d 915, 917 (8th Cir. 2015) (quoting *Bell*

*Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Barton v. Taber*, 820 F.3d 958, 964 (8th Cir. 2016) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Zink v. Lombardi*, 783 F.3d 1089, 1098 (8th Cir. 2015) (quoting *Iqbal*, 556 U.S. at 678), *cert. denied*, 135 S. Ct. 2941 (2015). The complaint's factual allegations must be "sufficient to 'raise a right to relief above the speculative level.'" *McDonough v. Anoka Cty.*, 799 F.3d 931, 946 (8th Cir. 2015) (quoting *Twombly*, 550 U.S. at 555). The Court must accept factual allegations as true, but it is not required to accept any "legal conclusion couched as a factual allegation." *Brown v. Green Tree Servicing LLC*, 820 F.3d 371, 373 (8th Cir. 2016) (quoting *Iqbal*, 556 U.S. at 678). Thus, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ash v. Anderson Merchandisers, LLC*, 799 F.3d 957, 960 (8th Cir. 2015) (quoting *Iqbal*, 556 U.S. at 678), *cert. denied*, 136 S. Ct. 804 (2016).

On a motion to dismiss, courts must rule "on the assumption that all the allegations in the complaint are true," and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 555 & 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Mickelson v. Cty. of Ramsey*, 823 F.3d 918, 923 (8th Cir. 2016) (alteration in original) (quoting *Iqbal*, 556 U.S. at 679).

**DISCUSSION**

Day seeks to hold Defendants liable for violations of the Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227, arising out of robocalls selling vehicle service contracts. Renny and the Matrix Defendants move to dismiss, arguing that this Court cannot exert personal jurisdiction over them, and that Day failed to state a claim against Renny.

**I. Personal Jurisdiction**

Nebraska's long-arm statute, Neb. Rev. Stat. § 25-536, "has been construed to permit jurisdiction to the extent of constitutional limits[,]" therefore, the Court need only "decide whether the exercise of personal jurisdiction over the defendants in this case comports with due process." *Pecoraro v. Sky Ranch for Boys, Inc.*, 340 F.3d 558, 561 (8th Cir. 2003) (citing *Oriental Trading Co. v. Firetti*, 236 F.3d 938, 943 (8th Cir. 2001)). Due process requires that the defendant have "minimum contacts" with the forum state such that "maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). Courts may exercise two types of personal jurisdiction: general and specific. *Creative Calling Sols., Inc. v. LF Beauty Ltd.*, 799 F.3d 975, 979–80 (8th Cir. 2015) (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 126–27 (2014)). A court may exercise general jurisdiction "to hear 'any and all claims against' a defendant if its 'affiliations with the State are so continuous and systematic as to render [it] essentially at home in the forum State.'" *Id.* (quoting *Daimler*, 571 U.S. at 127). Specific jurisdiction, however, only permits a court to hear claims against a defendant if

the "defendant has certain contacts with the forum State and the cause of action arises out of those contacts." *Id.* (citing *Daimler*, 571 U.S. at 126–27).

Day alleges the Court has specific jurisdiction over Renny and the Matrix Defendants.[1] In order for a court to exercise specific jurisdiction over a defendant, the defendant must have "purposely avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Fastpath, Inc. v. Abrela Techs. Corp.*, 760 F.3d 816, 821 (8th Cir. 2014) (quoting *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 880 (2011)). This "requirement ensures that a defendant will not be haled into a jurisdiction solely as the result of random, fortuitous, or attenuated contacts or of the unilateral activity of another party or a third person." *Id.* (quoting *Stanton v. St. Jude. Med., Inc.*, 340 F.3d 690, 693–94 (8th Cir. 2003)).

In the Eighth Circuit, to determine if a defendant has sufficient minimum contacts with the forum state to allow the court to exercise specific jurisdiction, courts balance five factors, the first three being of primary importance: "1) the nature and quality of contacts with the forum state; 2) the quantity of the contacts; 3) the relation of the cause of action to the contacts; 4) the interest of the forum state in providing a forum for its residents; and 5) convenience of the parties." *Id.* (citing *Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1073 (8th Cir. 2004)).

*A. Matrix Defendants*

Day asserts the Court can exercise personal jurisdiction over the Matrix Defendants because they purposefully availed themselves of Nebraska law and because they created an agency relationship with National Car by ratifying the robocalls.

---

[1] Day does not allege or argue the Court has general jurisdiction over any of the Defendants.

6

Day argues that the Matrix Defendants had sufficient contacts with Nebraska because they were parties to the vehicle service contract and because the contract was to be performed in Nebraska. In support of this argument, Day cites to several breach-of-contract cases in which the location of performance was key to the determination of specific jurisdiction. Pl.'s Br., ECF No. 41 at Page ID 244–45 (citing *Fastpath*, 760 F.3d 816; *Wells Dairy, Inc. v. Food Movers Int'l, Inc.*, 607 F.3d 515 (8th Cir. 2010); *Long v. Authentic Athletix LLC*, No. 16-cv-3129-JSC, 2016 WL 6024591 (N.D. Cal. Oct. 14, 2016); *J.D. Heiskel Holdings, LLC v. Trans Coastal Supply Co., Inc.*, No. 8:14CV277, 2015 WL 1918735 (D. Neb. Apr. 28, 2015)).

This is not a breach-of-contract case. The cause of action in this case is a claim under the TCPA. alleging unauthorized robocalls. Here, the relationship between the Matrix Defendants' contacts with Nebraska and the cause of action is insufficient for the Court to maintain specific personal jurisdiction over the Matrix Defendants.

Day also alleges the Court has jurisdiction over the Matrix Defendants through an agency relationship between the Matrix Defendants and National Car. "[A] court may exercise personal jurisdiction over a principal through the acts of his agent, [however,] '[a] party who relies upon the authority of an agent has the burden of proof regarding both the fact of the agency relationship and the scope of the agent's authority.'" *Romak USA, Inc. v. Rich*, 384 F.3d 979, 985 (8th Cir. 2004) (quoting *Karr-Bick Kitchens & Bath, Inc. v. Gemini Coatings, Inc.*, 932 S.W.2d 877, 879 (Mo. Ct. App. 1996)); *see also Wolfson Car Leasing Co. v. Weberg*, 264 N.W.2d 178, 182 (Neb. 1978) ("The party alleging the

7

existence of the agency relationship has the burden of proving the agent's authority and the agent's acts . . . .").[2]

Day argues that the Matrix Defendants ratified the robocalls made by, or at the direction of, National Car, thereby creating an agency relationship sufficient for the Court to exercise personal jurisdiction over the Matrix Defendants. [3]  Ratification is "the affirmance of a prior act done by another, whereby the act is given effect as if done by an agent acting with actual authority." *Cisneros v. Graham*, 881 N.W.2d 878, 889 (Neb. 2016) (quoting Restatement (Third) of Agency § 4.01(1)).  Under the Third Restatement, "[a] person ratifies an act by (a) manifesting assent that the act shall affect the person's legal relations, or (b) conduct that justifies a reasonable assumption that the person so consents." *Id.* (quoting Restatement (Third) of Agency § 4.01(2)).  However, "[a] person is not bound by a ratification made without knowledge of material facts involved in the original act . . . ." Restatement (Third) of Agency § 4.06.

Day argues "the Matrix [Defendants] ratified [National Car's] unlawful robocalling by accepting the benefits of new sales and new customers while having knowledge that the new customers were being generated by robocalling." Pl.'s Br., ECF No. 41 at Page ID 246.  Day further argues that the Matrix Defendants should have been aware that National Car was robocalling to sell vehicle service contracts because the Matrix Defendants were codefendants with a different corporation owned by Renny in a case in

---

[2] The Matrix Defendants agree that "an agency relationship showing vicarious liability may be relevant to show that specific jurisdiction exists . . . ." Defs.' Br., ECF No. 25-1 at Page ID 127.

[3] Day alleges in his Complaint that the Matrix Defendants should be held liable as a result of an agency relationship with National Car on the basis of actual and apparent authority as well as ratification. But he only raises a ratification argument in opposition to the Motion to Dismiss for lack of personal jurisdiction.  The Court will not discuss the theory of actual or apparent authority as it was not briefed by either party.

the Northern District of Illinois. *Shanahan v. Nat'l Auto Prot. Corp.*, No. 1:19-cv-3788, 2020 WL 3058088 (N.D. Ill. June 9, 2020) (dismissing the Matrix Defendants due to lack of personal jurisdiction).

The Matrix Defendants acknowledge they have an agreement with National Car, permitting them to sell vehicle service contracts, but argue they do not "control or have advanced knowledge of who National Car may call, how they call them, what they say on those calls, or on which particular consumers' calls they decide to market or sell a Matrix [Defendants] product as opposed to a . . . competitor's product." Tuerk Aff., ECF No. 25-2 at Page ID 138. Day fails to rebut the Matrix Defendants to show they had knowledge of the material fact required for ratification—that National Car was marketing vehicle service contracts by robocalling Nebraska consumers.

The fact that a plaintiff in Illinois brought a case alleging a different company owned by Renny contacted her through a robocall does not provide knowledge to the Matrix Defendants that National Car was contacting Nebraska consumers through robocalls to market vehicle service contracts. Without knowledge of this material fact, the Matrix Defendants could not have ratified the robocalls. Therefore, the Court cannot conclude that it has personal jurisdiction over the Matrix Defendants.

   *B. Renny*

Day argues the Court can assert personal jurisdiction over Renny based on Renny's own actions, by piercing the corporate veil to hold Renny liable for the actions of National Car, and because National Car was acting as an agent of Renny.

Day argues Renny purposely availed himself of Nebraska law because he "has taken steps to target Nebraska consumers through John Doe and National Car, and he

9

oversaw and directed the activities that resulted in the phone call to [Day]." Pl.'s Br., ECF No. 43 at Page ID 313. However, Day does not allege that Renny made the calls at issue, nor that he sold the vehicle service contract to Day. Renny's actions did not purposely avail himself of Nebraska law, and the Court cannot exercise personal jurisdiction over Renny due to his own individual actions.

Day argues the Court can exercise personal jurisdiction over Renny for the actions of National Car because National Car is an alter ego of Renny. Day's argument, plainly stated, is that Renny uses limited liability companies to violate the TCPA until somebody brings a claim against one; then he dissolves that company and begins using a new entity in a similar fashion.

To determine whether to pierce National Car's corporate veil, the Court applies the law of the state of incorporation, here Florida. *Peter Kiewit Sons', Inc. v. Wall St. Equity Grp., Inc.*, No. 8:10-CV-365, 2014 WL 4843674, at *13 (D. Neb. Sept. 29, 2014) (citing *Johnson v. Johnson*, 720 N.W.2d 20, 30 (Neb. 2006)), *aff'd*, 809 F.3d 1018 (8th Cir. 2016).

> Under Florida law:
>
> A debt, obligation, or other liability of a limited liability company is solely the debt, obligation, or other liability of the company. A member or manager is not personally liable, directly or indirectly, by way of contribution or otherwise, for a debt, obligation, or other liability of the company solely by reason of being or acting as a member or manager . . . . The failure of a limited liability company to observe formalities relating to the exercise of its powers or management of its activities and affairs is not a ground for imposing liability on a member or manager of the company for a debt, obligation, or other liability of the company.

Fla. Stat. § 605.0304. "Notwithstanding the limitation of liability afforded by Florida statute, it is possible to pierce an LLC's corporate veil under certain circumstances to hold

individual members or managers personally liable." *Hruska v. On the Edge Dockside LLC*, No. 19-14095-CIV, 2019 WL 5260276, at *2 (S.D. Fla. Aug. 2, 2019). To pierce the corporate veil, a plaintiff must plead and prove that:

> (i) the defendant shareholder dominated and controlled the corporation to such an extent that the corporation lacked an independent existence and the defendant was in fact an "alter ego" of the corporation; (ii) the defendant engaged in "improper conduct" in the formation or use of the corporation; and (iii) the improper formation or use of the corporate form injured the plaintiff.

*E. Okeechobee Palms, LLC v. Kellam*, No. 9:14-CV-80866, 2015 WL 12977392, at *4 (S.D. Fla. Feb. 23, 2015) (citing *Molinos Valle Del Cibao, C. por A. v. Lama*, 633 F.3d 1330, 1349 (11th Cir. 2011), *aff'd*, 637 F. App'x 568 (11th Cir. 2016); *XL Vision, LLC. v. Holloway*, 856 So. 2d 1063, 1066 (Fla. Dist. Ct. App. 2003) (applying corporate veil piercing principles to a limited liability company). "Improper conduct" means that the corporate entity was formed or used for some illegal, fraudulent, or other unjust purpose. *Hudson & Keyse, LLC v. Goldberg & Assocs.*, LLC, No. 07-81047-CIV, 2009 WL 790115, at *3 (S.D. Fla. Mar. 24, 2009) (citing *Hobbs v. Don Mealey Chevrolet, Inc.*, 642 So.2d 1149, 1156 (Fla. Dist. Ct. App. 1994); *Ally v. Naim*, 581 So.2d 961, 963 (Fla. Dist. Ct. App. 1991)).

Day argues that Renny dominated and controlled National Car for several reasons. First, Renny was the "member or authorized representative" who signed the Articles of Organization for the creation of National Car as well as the founding paperwork for other companies. Second, Renny signed the dissolution paperwork of three other entities.

11

Third, National Car now operates a website that was previously operated by another entity that Renny dissolved.[4]

These allegations are insufficient to demonstrate that Renny so dominated National Car as to make it an alter ego or mere instrumentality. Day does not allege facts showing that Renny "dominated and controlled [National Car] to such an extent that [National Car's] independent existence, was in fact nonexistent and [Renny] was in fact [an] alter ego[] of the corporation." *Abdo v. Abdo*, 263 So. 3d 141, 150 (Fla. Dist. Ct. App. 2018) (quoting *WH Smith, PLC v. Benages & Assocs., Inc.*, 51 So. 3d 577, 582 (Fla. Dist. Ct. App. 2010)). In Florida, "[t]he law is clear that the mere ownership of a corporation by a few shareholders, or even one shareholder, is an insufficient reason to pierce the corporate veil." *Houri v. Boaziz*, 196 So. 3d 383, 390 (Fla. Dist. Ct. App. 2016) (quoting *Gasparini v. Pordomingo*, 972 So. 2d 1053, 1055 (Fla. Dist. Ct. App. 2008)); *see also Dania Jai-Alai Palace, Inc. v. Sykes*, 450 So. 2d 1114, 1120 (Fla. 1984) ("The mere fact that one or two individuals own and control the stock structure of a corporation does not lead inevitably to the conclusion that the corporate entity is a fraud or that it is necessarily the alter ego of its stockholders . . . ."). Therefore, applying Florida law, Day has failed to allege facts which would permit the Court to pierce the corporate veil and exercise personal jurisdiction over Renny.

Day argues that Renny is liable for the actions of National Car as its principal. Day also argues that Renny ratified National Car's robocalls by accepting the benefits of the

---

[4] This fact is not alleged in the Complaint, ECF No. 1. However, even if it were, the fact goes to the element of National Car's improper conduct, not whether Renny so dominated National Car as to render it a mere instrumentality. *See Raber v. Osprey Alaska, Inc.*, 187 F.R.D. 675, 679 (M.D. Fla. 1999) (discussing commingling of corporate funds and assets as evidence of improper conduct).

12

sales, and therefore the Court may exercise personal jurisdiction over him. Day does not plead or argue that Renny knew of robocalls made to Nebraska, but that he was generally aware, due to previous litigation, that National Car was generating robocalls. For Renny to ratify National Car's robocalls to Nebraska, he must have been aware of the material fact of the existence of such calls. Because Plaintiffs have not alleged facts sufficient to show such knowledge, the Court cannot exercise personal jurisdiction over Renny.

## II. Failure to State a Claim

Day alleges two causes of action against Renny. First, Day alleges that Renny can be held liable as a corporate officer for violation of the TCPA. Second, he alleges that Renny can be held liable through piercing National Car's corporate veil. For the reasons stated above, Day failed to state facts sufficient to pierce National Car's corporate veil.

In the Eighth Circuit, "'any person' who violates the TCPA may be liable." *Golan v. FreeEats.com, Inc.*, 930 F.3d 950, 960 (8th Cir. 2019) (quoting 47 U.S.C. § 227(b)(1)). Under a direct liability theory, a plaintiff must allege facts showing that the defendant "actually 'initiate[d]' the offending phone call, meaning the person '[took] the steps necessary to physically place a telephone call.'" *Id.* at 961 (quoting *In re Dish Network, LLC*, 28 F.C.C. Rcd. 6574, 6583 (2013); *see also* § 227(b)(1)(B)). Day did not allege that Renny himself placed the calls at issue, and therefore he failed to state a cause of action for direct liability.

As to Day's agency theories of liability,

> where a business entity's officer (or employee) acts on behalf of the business to create an agency relationship with a direct violator, the agency relationship is between the direct violator and the business—not between the direct violator and the officer, unless the officer created the agency relationship in his or her personal capacity (and not on behalf of the business).

13

*Id.* at 961 n.10 (citing Restatement (Third) of Agency §§ 1.01, 6.01). To the extent an agency relationship was created between the party who initiated the call and Renny, it was an agency relationship with National Car, not with Renny. Therefore, even if the Court had personal jurisdiction over Renny, Day failed to state a claim against him.

### III. Jurisdictional Discovery

Day asks that, as an alternative to dismissal, the Court permit Day to conduct limited discovery for purposes of establishing personal jurisdiction over the Matrix Defendants and Renny.

When a plaintiff offers "documentary evidence, and not merely speculations or conclusory allegations, about [a defendant's] contacts with [the forum state]," the district court should permit the plaintiff to take jurisdictional discovery. *Steinbuch v. Cutler*, 518 F.3d 580, 589 (8th Cir. 2008) (citing *Dever*, 380 F.3d at 1074 n.1). In *Steinbuch*, evidence of an agreement between a book publisher and a distributor, providing for monthly sales reports to be given to the publisher, entitled the plaintiff to conduct jurisdictional discovery to determine if the publisher had reasonable expectations and knowledge that its products were going to be offered in the forum state.

Here, Day has provided evidence of a vehicle service contract, to which the Matrix Defendants are a party, sold by National Car to Day in Nebraska; and the Matrix Defendants have acknowledged that there is an agreement between the Matrix Defendants and National Car for National Car to sell vehicle service contracts. This documentary evidence entitles Day to conduct jurisdictional discovery of the Matrix Defendants to attempt to overcome the jurisdictional issues discussed in this Memorandum and Order. However, even if the Court had personal jurisdiction over

Renny, Day has failed to state a claim against him. Therefore, jurisdictional discovery of Renny would be futile.

## IV. Conclusion

Day has not demonstrated that this Court has personal jurisdiction over the Matrix Defendants or Renny. As an alternative to dismissal, the Court will permit Day to conduct limited jurisdictional discovery of the Matrix Defendants. However, even if the Court had personal jurisdiction over Renny, Day has failed to state a plausible claim against him. Therefore, jurisdictional discovery of Renny would be futile, and this action will be dismissed against Renny.

Accordingly,

IT IS ORDERED:

1. The Motion to Dismiss filed by Defendants Matrix Financial Services, LLC, and Matrix Warranty Solutions, Inc.*,* ECF No. 25, is denied without prejudice to reassertion;

    a. Day is given leave to conduct jurisdictional discovery;

    b. Counsel for Day and the Matrix Defendants shall confer in good faith and propose a joint discovery plan or stipulation to the Magistrate Judge assigned to this case, no later than August 10, 2020, covering the topics and methods of discovery;

2. The Motion to Dismiss filed by Defendant Gustav Renny, ECF No. 28, is granted;

3. The above-captioned action is dismissed, with prejudice, as to Defendant Gustav Renny; and

4. The Clerk of Court shall amend the caption to reflect the dismissal of Defendant Gustav Renny.

Dated this 24th day of July 2020.

>BY THE COURT:
>
>s/Laurie Smith Camp
>Senior United States District Judge